Henderson *v.* The Indiana Trust Co., Assignee.

inexpediency of vacating the alley. That question belongs to the common council."

The judgment is affirmed.

Filed September 24, 1895 ; petition for rehearing overruled January 29, 1896.

No. 17,474.

HENDERSON *v.* THE INDIANA TRUST CO., ASSIGNEE.

CORPORATION.—*Insolvent.*—*Preferring Creditors.*—*Directors.*—*Stockholders.*—An insolvent corporation retaining possession and control of its property may prefer any of its creditors who are not stockholders or directors, even though the preferred claims are secured by the endorsement of the directors and part of the stockholders.

| | |
|---|---|
| 143 | 561 |
| 143 | 543 |
| 143 | 553 |
| 143 | 561 |
| 146 | 554 |
| 147 | 320 |
| 143 | 561 |
| 148 | 345 |
| 149 | 583 |
| 151 | 431 |
| 152 | 242 |
| 143 | 561 |
| 159 | 620 |

From the Marion Circuit Court.

*Harding & Hovey, Miller, Winter & Elam* and *C. M. Cooper,* for appellant.

*C. Martindale,* for appellee.

MONKS, J.—Appellee, as assignee of the D. E. Stone Furniture Company, filed its petition in the court below against appellant for the purpose of setting aside an assignment of certain accounts receivable of the D. E. Stone Furniture Co., which had been assigned to appellant to secure an indebtedness of $6,000.00, evidenced by the note of the corporation, payable to appellant. To this petition appellant appeared and filed a general denial. At the request of the parties the court made a special finding of the facts, and stated its conclusions of law thereon.

It appears from the special finding, that the D. E.

Stone Furniture Company was a corporation organized in 1889, under the laws of this State, to manufacture furniture in the city of Indianapolis, with a capital stock of $50,000.00, which was afterwards increased to $75,-000.00. On January 30, 1892, the corporation borrowed from appellant $6,000.00 and gave its note to him for that amount, payable six months after date at the Capital National Bank with six per cent. interest, on which $180.00 interest was paid July 30, 1892. At the time another note was executed as collateral security to appellant, dated January 30, 1892, payable one year after date at the Capital National Bank for $6,000.00; with eight per cent. interest after maturity; said collateral note was signed by D. E. Stone Furniture Company, per D. E. Stone, president, and countersigned by C. B. Clark, secretary, and endorsed by D. E. Stone, C. B. Clark, John Picken, A. H. Gladden, John J. Cooper, J. H. Murray, Charles A. Murray and John E. Christian; that the collateral note was endorsed by said endorsers for the accommodation of said corporation and to enable it to procure said loan from appellant, and all of said endorsers were, at the time, directors of said corporation, except J. H. Murray, Charles A. Murray and A. H. Gladden, who were, at the time and until the trial below, stockholders of said company; that J. H. Murray, John E. Christian and A. H. Gladden endorsed such collateral note upon the representation and agreement made to and with them at the time by D. E. Stone, the then president, and C. B. Clark, the then treasurer of said corporation; that the property of said corporation would be put up as security and exhausted before they should be called upon to pay any part of said debt; that on June 23, 1893, the board of directors held a meeting, at which the treasurer reported that appellant had made a demand for the payment, on July

1, 1893, of the $6,000.00 note and interest owing to him by said corporation; and that there was no money on hand to pay the same, nor any resources from which the money could be realized by that time, and thereupon the board of directors authorized the treasurer to assign and deliver to appellant accounts owing to said company to an amount not exceeding $6,500.00, to secure the payment of said note and interest ; that pursuant to such order the treasurer made out statements of accounts which were owing to said corporation from various parties, and on each of said accounts assigned the same in writing to appellant, which writing was signed by the president and treasurer of said corporation, and the same were delivered to, and accepted by, appellant, June 24, 1893. Appellant never demanded such assignment of accounts or any transfer or pledge of any of the property of the corporation, and had no knowledge of the purpose to assign the accounts to him, or that the assignment of said accounts had been directed or made until the delivery and acceptance by him of such accounts ; that said accounts were not accepted as a payment but as collateral security, to be collected and the proceeds to be applied on said note of said corporation ; that the board of directors, when they ordered the assignment of the accounts, knew of the financial condition of the corporation, and that the same was insolvent, and that unless a reorganization of said corporation could be speedily effected, or outside capital induced to invest, said corporation would be compelled to make a general assignment for the benefit of its creditors, but had not on said date determined upon or taken any legal steps in relation thereto ; that on June 26, 1893, said corporation, being in embarrassed and failing condition, executed a general deed of assignment for the benefit of all its creditors under the laws

of the State, to Smith H. Myers; that on the 14th day of August, 1893, the court removed said assignee and appointed appellee as assignee in his stead; that on the 23d day of June, 1893, the indebtedness of said corporation was $38,934.20, $23,000.00 of which was secured by mortgages on all the property of the corporation, except the accounts and bills receivable. The property of the corporation was appraised by the appellee as assignee, August 14, 1893, at $38,734.09, including the accounts and bills receivable, claimed by appellant, which were appraised at $4,023.24; that on the 23d day of June, the debts of said corporation exceeded the value of its assets, it had no cash on hand and was unable to raise or command any; its indebtedness was past due and many of its creditors were demanding payment of said corporation's indebtedness to them; that said corporation on said 23d day of June, was in embarrassed and failing circumstances and insolvent; that said accounts were so transferred to appellant by the board of directors for the purpose of protecting the endorsers on said collateral note held by appellant, and by way of preference in the payment of the debt so secured by said collateral note.

Upon the facts found the court stated conclusions of law:

That the law is with the petitioner, the transfer of said accounts is void and of no effect and should be set aside, and that the same constitute a part of the general assets of said trust estate, to be disposed of free from all liens of said appellee.

Appellant excepted to the conclusions of law and judgment was rendered upon the special finding in favor of the appellee.

Appellant assigns as error, that the court erred in its conclusions of law upon the facts found.

Counsel for appellee earnestly contends that the conclusions of laws stated by the court are correct; that the rule of law is, that "as soon as a corporation becomes insolvent, the property of the company becomes in the hands of the directors a trust fund for the payment of all its debts, and that the director who is also a creditor cannot take advantage of his superior means of information to obtain a preference of his own debt (or a debt for which he is an endorser) over the debts of other creditors." On the other hand, counsel for appellant contend that the assets of an insolvent corporation are not a trust fund in the hands of its directors for its creditors, that they only become impressed with the character of a trust fund when in a proper proceeding by proper parties they have been taken into the possession of a court of equity, for the purpose of being administered and distributed to creditors and stockholders. Until then they are the property of the corporation, and the directors have the same right to dispose of them by way of preference to creditors as an insolvent individual would have.

It is settled law in this State that an insolvent debtor has full right and power to prefer certain creditors to the exclusion of others. *Fuller & Fuller Co.* v. *Mehl*, 134 Ind. 60; *Hutchinson, Ass'nee,* v. *First Nat'l Bank*, 133 Ind. 271; *Shillito Co.* v. *McConnell*, 130 Ind. 41; *Dice* v. *Irvin,* 110 Ind. 561.

When an action is brought to set aside such preferences as fraudulent, the question of fraudulent intent to cheat, hinder, and delay creditors is one of fact and not of law. *Wilson* v. *Campbell*, 119 Ind. 286, and authorities above cited.

It is also settled law in this State that where partnership assets remain under the control of the partners, they have the power, though insolvent, to appropriate

any portion of it to pay the individual debts of the members of the firm to the exclusion of the partnership creditors. *Purple* v. *Farrington*, 119 Ind. 164, and authorities cited.

In *Fisher* v. *Syfers*, 109 Ind. 514, this court said: "Where debts are fairly owing by either partner individually, the mere preference of individual over partnership creditors by the execution of a chattel mortgage, in the firm name or by authority of the partners upon the property of the firm, is not of itself such a fraud upon the partnership creditors as will authorize .the setting aside of the chattel mortgage at the suit of a creditor. * * * Upon the death of one partner, or where the firm becomes bankrupt, or where the partnership assets are being administered by a court, the rule of equitable distribution is applicable to its fullest extent. Where, however, the partners have the possession and control of their own property, they have the .right to make any honest disposition of it they see fit; each has the right to waive his equitable lien, and together they may sell, assign or mortgage the property of the firm, to pay or secure either an individual debt of one of the partners, or the debts of the firm."

In *Winslow* v. *Wallace, Rec.*, 116 Ind. 317, this court by Mitchell, Judge, said: "It is settled everywhere, that when the assets of a partnership, or the individual property of the members of the firm, are brought under the jurisdiction of a court for judicial administration, the equitable rule of distribution will be applied, and the partnership assets will be devoted first to the payment of the firm debts, and the individual property of the several partners to their individual debts respectively. But where the partnership assets remain under the control of the partners, they have the power to appropriate any portion of it to pay or secure the individual debts

of the members of the firm. * * * It being thus settled
that partners, while they remain in possession and con-
trol of partnership property, and before it is brought
under the jurisdiction of a court for administration,
may create liens upon the property, or appropriate it to
pay or secure the individual debts of the partners, the
correlative right of an individual partner to deal in like
manner with his own separate property, and appropriate
it to pay or secure his own debt to the firm or a debt
owing by the firm to a third person, would seem to fol-
low as a matter of course."

In the case of *Fogg* v. *Blair*, 133 U. S. 534, 541, the
court, by Mr. Justice Field, said : "We do not ques-
tion the general doctrine invoked by the appellant that
the property of a railroad company is a trust fund for
the payment of its debts, but do not perceive any place
for its application here. That doctrine only means
that the property must be first appropriated to the pay-
ment of the debts of the company before any portion of
it can be distributed to the stockholders; it does not
mean that the property is so affected by the indebted-
ness of the company that it cannot be sold, transferred,
or mortgaged to a *bona fide* purchaser for a valuable
consideration, except subject to the liability of being
appropriated to pay that indebtedness. Such a doctrine
has no existence."

In the case of *Hollins* v. *Brierfield Coal and Iron
Co.*, 150 U. S. 371, 385, Mr. Justice Brewer, in speaking
of the sense in which the words "trust fund" were used
with reference to the assets of a corporation, said :
"The same idea of equitable lien and trust exists to
some extent in the case of partnership property.
Whenever a partnership becoming insolvent, a court of
equity takes possession of its property, it recognizes the
fact that in equity the partnership creditors have a right

to payment out of those funds in preference to individual creditors as well as superior to any claims of the partners themselves. And the partnership property is, therefore, sometimes said, not inaptly, to be held in trust for the partnership creditors, or, that they have an equitable lien on such property. Yet all that is meant by such expression is the existence of an equitable right which will be enforced whenever a court of equity, at the instance of a proper party and in a proper proceeding, has taken possession of the assets. It is never understood that there is a specific lien, or direct trust.

"A party may deal with a corporation in respect to its property in the same manner as with an individual owner, and with no greater danger of being held to have received into its possession property burdened with a trust or lien. The officers of a corporation act in a fiduciary capacity in respect to its property in their hands and may be called to an account for fraud or sometimes mere mismanagement in respect thereto; but as between itself and its creditors the corporation is simply a debtor, and does not hold its property in trust, or subject to a lien in their favor, in any other sense than does an individual debtor."

In the case of *Sanford Fork and Tool Co.* v. *Howe, Brown & Co., Limited*, 157 U. S. 312, Mr. Justice Brewer, speaking for the court, said: "Are creditors who are neither stockholders nor directors, but strangers to a corporation, disabled from taking security from the corporation by reason of the fact that upon the paper they hold there is also the endorsement of certain of the directors or stockholders? Must, as a matter of law, such creditors be content to share equally with the other creditors of the corporation, because, forsooth, they have also the guarantee of some of the directors or stockholders, whose guarantee may or may

not be worth anything?" See also *Graham* v. *Railroad Co.*, 102 U. S. 161; *Wabash, etc., R. W. Co.* v. *Ham*, 114 U. S. 587 (594); *Richardson* v. *Green*, 133 U. S. 30 (44); *Peters* v. *Bain*, 133 U. S. 670 (691); *Smith Purifier Co.* v. *McGroarty*, 136 U. S. 237 (241).

It follows from the authorities in this State that until the court by its officers takes charge of the property of an insolvent corporation it has the same power and control over its property as an individual would have over his property under like circumstances. This question is fully considered and cases cited in the note to *Conover* v. *Hull*, 45 Am. St. Rep. 826–835. See also *Brown* v. *Grand Rapids Parlor Furniture Co.*, 58 Fed. Rep. 286 (7 C. C. A. 225; 16 U. S. App. 225); 2 N. W. Law Rev. 167; 3 N. W. Law Rev. 115, 206; *In Re Wincham Shipbuilding Co.*, 9 L. R., Ch. Div. 322.

It should be remembered that the debt to appellant was a *bona fide* one; that he was not a stockholder or director, but a stranger to the corporation; that when the accounts were delivered to and accepted by appellant, the corporation was a going concern; that he had no notice or knowledge that the corporation was insolvent, or that the accounts were transferred and assigned to him for the purpose of protecting the endorsees, or with the fraudulent intent to cheat, hinder, and delay the other creditors of the corporation, if there was any such intent.

It is clear upon the facts, under the law as stated, that the court below erred in its conclusions of law.

Whatever may be the rule elsewhere, the law in this State is that an insolvent corporation may, under the facts as shown in this case, while it has the possession and control of its property, prefer any of its creditors who are not stockholders or directors of the corporation, even though the claims so preferred are secured by the

endorsement of the directors and a part of the stockholders.

Whether an insolvent corporation may prefer a creditor who is a director or stockholder, we need not and do not decide.

Judgment reversed, with instructions to the court below to restate its conclusions of law and render judgment in accordance with this opinion.

Filed April 25, 1895; petition for rehearing overruled January 29, 1896.